**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
                                    :
CORDELL MAURICE BINES,              :
                                    :    Civ. Action No. 16cv1834(RMB)
            Petitioner,             :
                                    :
      v.                            :          OPINION
                                    :
UNITED STATES OF AMERICA,           :
                                    :
            Respondent.             :
                                    :
```

**Appearances:**

Cordell Maurice Bines
United States Penitentiary Max
P.O. Box 8500
Florence, CO 81226-8500
        Petitioner, pro se

Matthew J. Skahill, Assistant United States Attorney
U.S. Attorney's Office
401 Market St., 4th Floor
Camden, NJ 08101
        On behalf of Respondent

**BUMB**, United States District Judge

    This matter comes before the Court on Petitioner Cordell

Maurice Bines' ("Petitioner") Motion under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence by a Person in Federal

Custody. ("2255 Mot.," ECF No. 1; Mem. in Supp. of 2255 Mot.

("Petr's Mem." ECF No. 1-4.) The Government filed an Answer in

opposition to the motion (Answer, ECF No. 9), and Petitioner filed

a Reply. (Petr's Reply, ECF No. 10.) For the reasons discussed below, the § 2255 motion is denied.

I.    BACKGROUND

On September 4, 2007, Petitioner pled guilty to two counts of bank robbery in violation of 18 U.S.C. § 2113(a), (d) and one count of carrying and discharging a firearm in connection with one of the robberies, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Unites States v. Bines, 07cr714(RMB)(D.N.J.)(Plea Agreement, ECF No. 15.) At the time of sentencing on January 24, 2008, Petitioner, who was eighteen-years-old, had the following two juvenile adjudications: robbery and criminal conspiracy, adjudicated on December 5, 2001,[1] and robbery [under alias Corey Maurice Burton] adjudicated on June 30, 2005.[2] (Presentence Investigation Report ("PSR"), ECF No. 1-3 at 8, ¶¶57-61.)

In calculating Petitioner's criminal history for his federal sentence, two points were added under U.S.S.G. § 4A1.1(d) because he committed the federal offenses while on probation. (Id., ¶63.) Petitioner was on probation for his June 2005 juvenile adjudication.[3] One point was added under U.S.S.G. § 4A1.1(e)

---

[1] Petition 7954-01-10 in the Philadelphia Court of Common Pleas.

[2] Petition 0514-05-06 in the Philadelphia Court of Common Pleas.

[3] Petitioner was discharged from probation on May 6, 2008. (Motion for an Expedited Expungement Hearing Within 30 Days, ¶6, ECF No. 1-3.)

because his federal offenses were committed less than two years from his release from custody on November 14, 2006. (PSR, ¶63, ECF No. 1-3 at 9.)

Petitioner had seven criminal history points, placing him in a criminal history Category IV. (Id.) The total offense level of Counts One and Two was 30, and Count Three carried a mandatory ten-year consecutive sentence. (Sentencing Tr., Ex. C at 4:4-14, ECF No. 9-5.) Thus, the Guidelines range for Counts One and Two was 135 to 168 months, with a mandatory ten-year sentence on Count Three. (Id.)

At sentencing, the Court considered the § 3553(a) factors and sentenced Petitioner to a 168-month term of imprisonment on Counts One and Two, to be served concurrently, and a 120-month term of imprisonment on Count Three to be served consecutively, for a total of 288-months, with a five-year term of supervised release to follow. (Id. at 31:10-36:13.) Petitioner filed a Notice of Appeal on February 1, 2008. United States v. Bines, 07cr714(RMB)(D.N.J.) (Notice of Appeal, ECF No. 20.) The Third Circuit Court of Appeals affirmed the judgment on January 28, 2009. U.S. v. Bines, 309 F. App'x 580 (3d Cir. 2009).

On April 1, 2016, Petitioner filed his § 2255 motion, seeking resentencing upon expungement of his June 30, 2005 juvenile adjudication in the Philadelphia Court of Common Pleas. (2255 Mot. ¶12, ECF No. 1 at 5.) Petitioner attached the expungement order

3

to his motion. (Order to Expunge a Juvenile Record, ECF No. 1-3 at

1-6.) The expungement order states, in relevant part:

> upon consideration of the motion for
> Expungement filed by counsel for the above
> which is hereby incorporated by reference, it
> is ORDERED that all records pertaining to the
> arrest, delinquency petition and otherwise
> regarding the above are EXPUNGED, in
> accordance with the law. See the attached
> petition. This order for expungement shall
> include, but not limited to all records kept
> by electronic means and all computer data. It
> shall also include all official and unofficial
> arrest files and all other documents
> pertaining to the above-captioned matter. Each
> person and/or agency referenced below shall
> request the return of such records which it
> has made available to local, state and federal
> agencies, and shall destroy such records
> immediately upon receipt. Official records of
> such requests shall be maintained until such
> time as the complete record has been retrieved
> and destroyed.

(Id. at 1-2.) The motion attached to the expungement order contains

the following factual representations:

> Petitioner, Corey Maurice Burton, by his
> attorneys Elton Anglada, Assistant Defender,
> Chief, Juvenile Unit and Keir Bradford-Grey,
> Chief Defender, respectfully represents that:
>
> 1. Petitioner, Corey Maurice Burton was
> born on January 18, 1989.
>
> 2. Petitioner was arrested by the
> Philadelphia Police Department on June
> 17, 2005 and was charged with the above
> referenced charges.
>
> 3. Petitioner's arrest is documented
> under district control number
> 0506036732.

4

4. The Petitioner's case is documented under offense tracking number N3431341.

5. On June 30, 2005, the Petitioner appeared before the Honorable Robert Rebstock, at which time the Petitioner was adjudicated delinquent of Robbery(F3) and committed to Benchmark.

6. On May 6, 2008, the Petitioner appeared before Master Betsy Wahl, at which time the probation was discharged.

7. Petitioner is eligible for an expungement pursuant to 18 Pa. C.S. Section 9123.

8. Five years have passed since the discharge date.

9. Petitioner is presently 26 years of age, having been born on January 18, 1989.

10. Petitioner has no adult record.

11. Petitioner fears that this juvenile record will be detrimental to his future success.

(Motion for an Expedited Expungement Order Within 30 Days, ECF No. 1-3 at 4-5.)

Petitioner asserts three points should be taken off his criminal history, resulting in a Guidelines range of 108 to 135-months imprisonment. (2255 Mot., ECF No. 1 at 7.) Petitioner contends that under U.S.S.G. § 4A1.2(j), Application Note 10, a defendant who successfully attacks his state sentence may seek review of a federal sentence enhanced by the state conviction. (Petr's Mem., ECF No. 1-4 at 2.) Petitioner argues that the relief

he seeks falls outside the appellate waiver in the plea agreement, his plea was not knowing and voluntary, and that enforcement of the waiver would create a miscarriage of justice. (Petr's Mem., ECF No. 1-4 at 5-6.)

Respondent opposes relief for three reasons: (1) a valid waiver of collateral review rights; (2) untimeliness of the motion; and (3) the expungement was not based on actual innocence or any error of law, and Petitioner would not have been eligible for expungement if the Court of Common Pleas had been made aware of his true criminal record. (Answer, ECF No. 9 at 2.)

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may move to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the Constitution. 28 U.S.C. § 2255(a). Courts should liberally construe a pro se § 2255 petition. U.S. v. Delgado, 363 F. App'x 853, 855 (3d Cir. 2010) (per curiam).

28 U.S.C. § 2255(b) provides, in relevant part, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall … grant a prompt hearing thereon …;" see United States v. Tolliver, 800 F.3d 138, 140 (3d Cir. 2015) ("the district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the

movant is entitled to relief") (quoting United States v. Booth, 432 F.3d 542, 546 (3d Cir. 2005)).

Here, Petitioner seeks relief on the basis that his most recent juvenile adjudication was expunged, lowering his criminal history score for federal sentencing. U.S.S.G. § 4A1.2(j) states, "Expunged Convictions[:] Sentences for expunged convictions are not counted, [in computing criminal history] but may be considered under § 4A1.3 (Adequacy of Criminal History Category). Application Note 10 to U.S.S.G. § 4A1.2(j) provides:

> Convictions Set Aside or Defendant Pardoned. A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not counted.

Expungement of a juvenile adjudication in Pennsylvania is governed by 18 Pa C. S. § 9123, which provides:

> (a) Expungement of juvenile records.-- Notwithstanding the provisions of section 9105 (relating to other criminal justice information) and except upon cause shown, expungement of records of juvenile delinquency cases wherever kept or retained shall occur after 30 days' notice to the district attorney, whenever the court upon its motion or upon the motion of a child or the parents or guardian finds:
>
> > (1) a complaint is filed which is not substantiated or the petition which is

filed as a result of a complaint is dismissed by the court;

(2) six months have elapsed since the final discharge of the person from supervision under a consent decree and no proceeding seeking adjudication or conviction is pending;

(3) five years have elapsed since the final discharge of the person from commitment, placement, probation or any other disposition and referral and since such final discharge, the person has not been convicted of a felony, misdemeanor or adjudicated delinquent and no proceeding is pending seeking such conviction or adjudication; or

(4) the individual is 18 years of age or older, the attorney for the Commonwealth consents to the expungement and a court orders the expungement after giving consideration to the following factors:

(i) the type of offense;

(ii) the individual's age, history of employment, criminal activity and drug or alcohol problems;

(iii) adverse consequences that the individual may suffer if the records are not expunged; and

(iv) whether retention of the record is required for purposes of protection of the public safety.

(b) Notice to prosecuting attorney.--The court shall give notice of the applications for the expungement of juvenile records to the prosecuting attorney.

(c) Dependent children.--All records of children alleged to be

> or adjudicated dependent may be
> expunged upon court order after
> the child is 21 years of age or
> older.
>
> (a.1) Exceptions.--Subsection (a) shall not
> apply if any of the following apply:
>
> …
>
> (2) Upon cause shown.

18 Pa. C.S. § 9123.[4]

B. <u>Analysis</u>

1. <u>Waiver of Collateral Review</u>

The plea agreement Petitioner entered into in Criminal Action

No. 07-714(RMB) (D.N.J.) includes the following stipulation:

> Cordell Maurice Bines knows that he has and,
> except as noted below in this paragraph,
> voluntarily waives, the right to file any
> appeal, any collateral attack, or any other
> writ or motion, including but not limited to
> an appeal under 18 U.S.C. § 3742 or a motion
> under 28 U.S.C. § 2255, which challenges the
> sentence imposed by the sentencing court if
> the sentence for Counts 1 and 2 falls within
> or below the Guidelines range that result from
> the agreed total Guidelines offense level of
> 30 and the Court imposes a ten-year
> consecutive term of imprisonment for Count
> Three. … The parties reserve any right they
> may have under 18 U.S.C. § 3742 to appeal the
> sentencing court's determination of the
> criminal history category. …

---

[4] On January 25, 2008, when Judgment was entered against Petitioner
in <u>United States v. Bines</u>, 07-714(RMB) (D.N.J.) (Judgment, ECF No.
19), the version of 18 Pa. C.S. § 9123 in effect was, in all
material respects, the same as the present version.

United States v. Bines, 07cr714(RMB) (D.N.J. ) (Plea Agreement, ECF No. 15.)

"[W]here there is a collateral waiver," courts must consider "the validity of the waiver, specifically examining the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." U.S. v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008). A waiver must be enforced unless the court identifies the "unusual circumstance" of "an error amounting to a miscarriage of justice" involving the sentence. United States v. Erwin, 765 F.3d 219, 226 (3d Cir. 2014) (quoting U.S. v. Khattak, 273 F.3d 557, 562 (3d Cir. 2001). Factors to consider before invalidating a waiver based on a miscarriage of justice include the clarity of the alleged error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." Id. at 242-43 (citing United States v. Teeter, 257 F.3d 14, 25–26 (1st Cir. 2001)).

Petitioner offers five reasons not to enforce the waiver of collateral review in his plea agreement. First, Petitioner asserts he could not have contemplated that a broad general waiver of appellate rights would have foreclosed appeal of his sentence based on a later expunged conviction used to enhance his sentence.

(Petr's Reply, ECF No. 10 at 4.) Second, he contends his waiver was not knowing and voluntary because he suffers from a learning disability and borderline intellectual functioning, as shown in his PSR, and he did not fully understand what was explained to him when he entered his guilty plea. (Id. at 4-5.) Third, he claims his counsel was ineffective by failing to fully explain the terms of the waiver of appellate rights. (Id. at 6.) Fourth, he maintains that to preclude relief under these circumstances constitutes a fundamental miscarriage of justice. (Id.) Fifth, he argues this motion is outside the scope of his waiver. (Id.)

The Court rejects Petitioner's claim that his plea was not knowing and voluntary because the plea agreement, United States v. Bines, 07cr714(RMB) (D.N.J.) (Plea Agreement, ECF No. 15) and the plea colloquy (Plea Transcript, ECF No. 9-4) establish that he was informed of and understood the rights he agreed to waive. Specifically, Petitioner agreed he could read and write English perfectly, he understood all the rights he was waiving, and he did not have a physical or mental impairment that interfered with his understanding of the plea agreement.[5] See Taylor v. Horn, 504 F.3d

---

[5] "I take it you read and write and understand English perfectly?" "Yes." (Plea Transcript, ECF No. 9-4 at 4.) "Is there anything about today that you don't understand and are you able to think clearly? "Yes, Ma'am." (Id. at 5.) "Do you have any other physical or mental condition that might impair your ability to understand what's going on here today?" "No, ma'am." (Id.)

416 (3d Cir. 2007) (affirming the district court's conclusion that the petitioner appreciated the significance of his plea despite his depression and other mental deficiencies); United States v. Ruiz, 536 U.S. 622, 629 (2002) ("the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances—even though the defendant may not know the specific detailed consequences of invoking it.")

Petitioner also contends the Court should not enforce the waiver because his counsel failed to fully explain the terms of the waiver of appellate rights. (Petr's Reply, ECF No. 10 at 6.) The Third Circuit has held that when the district court advised the defendant that he was waiving his right to file a motion to vacate his sentence "and other valuable rights to obtain collateral review of your sentence" and the defendant confirmed under oath that he understood, the court was not required to further define collateral proceedings or list the types of claims the petitioner would no longer be permitted to bring as a result of that waiver. U.S. v. Delbridge, 504 F. App'x 145, 149-50 (3d Cir. 2012); see U.S. v. Robinson, 244 F. App'x 501, 503 (3d Cir. 2007) (rejecting the petitioner's allegations of ineffective assistance of counsel by failing to properly explain waiver of right to appeal or collaterally attack sentence because the plea agreement and plea

colloquy established the petitioner understood he was waiving his right to challenge any aspect of the proceeding with certain narrow exceptions).

Petitioner was informed of the broad nature of the waiver of collateral review. The following conversation occurred at the plea colloquy:

> THE COURT: Okay. Mr. Bines, do you understand that you have given up your right to appeal as set forth in paragraph 22 [of the Plea Agreement]? Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And paragraph 22 says that you have voluntarily waived the right to file any appeal, **any** collateral attack or **any other writ or motion** which challenges the sentence imposed by the Court if the sentence for Counts 1 and 2 falls within or below the guidelines range that results from the agreed total guidelines offense level of 30 and the Court imposes a ten-year consecutive term of imprisonment for Count 3. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you discussed that with your attorney.
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And so if that condition in paragraph 22 is met, you cannot appeal my sentence that I give you because it was unreasonable. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.

(Plea Transcript, ECF No. 9-4 at 21:23 – 22:15) (emphasis added). Based on the above, the plea was knowingly and voluntary.

Furthermore, the present motion is not outside the scope of the waiver in the plea agreement. The plea agreement contains a reservation of the right to appeal the sentencing court's determination of the criminal history category under 18 U.S.C. § 3742. A reservation of the right to appeal under § 3742 reserves only the right to file a direct appeal. See Watts v. U.S., 386 F. App'x 245, 248 (3d Cir. 2010) (the defendant "could have reserved his right to challenge his criminal history category by way of a § 2255 motion, but he did not.") Petitioner filed a direct appeal in this matter, and the Third Circuit affirmed the Judgment. U.S. v. Bines, 309 F. App'x 589 (3d Cir. 2009). The expungement of Petitioner's juvenile conviction occurred in 2015, years after his federal sentencing. This is not a sentencing error that could have been challenged on appeal, as the exception to waiver in the plea agreement was intended.

Most importantly, enforcing the waiver does not create a fundamental miscarriage of justice under the circumstances present here. Petitioner obtained expungement of his juvenile adjudication under the false pretense that he had no adult criminal record.[6]

---

[6] If Petitioner was entitled to an expungement of his juvenile adjudication under Pennsylvania law, this Court would agree that it would pose a fundamental miscarriage of justice to refuse to recalculate his federal sentence based on his waiver of collateral

Petitioner was adjudicated delinquent for robbery on June 30, 2005 by the Philadelphia Court of Common Pleas. (PSR ¶61, ECF No. 1-3 at 8.) On August 12, 2005, he was committed to a delinquent institution. (Id.) On November 14, 2006, he was discharged from commitment and placed on aftercare probation. (Id.) In February 2007, he was arrested for robbery, and he pled guilty on September 4, 2007, in Criminal Action No. 15cr111(RMB). United States v. Bines, 05cr111(RMB) (D.N.J.) (Plea Agreement, ECF No. 15.)

18 Pa. C.S. § 9123(a)(3) provides for expungement of juvenile records upon motion when

> five years have elapsed since the final discharge of the person from commitment, placement, probation or any other disposition and referral and since such final discharge, the person has not been convicted of a felony, misdemeanor or adjudicated delinquent and no proceeding is pending seeking such conviction or adjudication; …
>
> (a.1) Exceptions .--Subsection (a) shall not apply if any of the following apply:
>
> …
> (2) upon cause shown.

Petitioner's juvenile adjudication of June 30, 2005 was expunged under Pa. C. S. § 9123(a)(3), but Respondent contends it was expunged in error based on a misrepresentation to the court that Petitioner had no adult record. Respondent submitted the

---

review. See Johnson v. United States, 544 U.S. 295, 303 (2005) ("a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated.")

following letter, dated October 19, 2016, from Carole Weiner, Assistant Chief of the Juvenile Court Unit, Philadelphia District Attorney's Office.

> As a follow-up to our conversation earlier this week I am sending you this letter to provide some greater context regarding Judge Rebstock's December 11, 2015 order expunging the above-captioned defendant's Delinquent Court record. As you are aware, the Defender Association of Philadelphia filed the motion seeking expungement of Burton's Delinquent Court record. After we discussed that such motion failed to advise Judge Rebstock that Burton had been convicted in Federal Court in the District of New Jersey I contacted the supervisors of the Philadelphia Defender's Juvenile Court Unit to ask they clarify on what basis they filed a motion that failed to fully inform the Court of Burton's complete record. Elton Anglada, Chief of the Unit, provided me with the following response:

> As I understand it, (C)ordell (M)aurice (B)urton has an out-of-state record that would have rendered him ineligible for an expungement had this been known prior to the expungement hearing. Since we don't have access to FBI abstracts here at the Defender Association, we would have had no way of knowing about CMB's out-of-state record. If you want to send a letter to the AUSA indicating that CMB's expungement was granted with incomplete information known to the parties at the time of the expungement hearing, that is certainly your prerogative. To the extent that the expungement was properly granted given the information available to the court at the time of the hearing, I would not characterize CMB's expungement as being "granted in error," but I will leave the wording of your letter to you.

> Hopefully, this information clarifies Judge
> Rebstock's order, demonstrating the decision
> to grant the expungement was based solely on
> the representation that Burton had no other
> record in Pennsylvania. I am confident that
> had the Defender Association been aware of
> Burton's Federal Court record the motion would
> not have been filed. Similarly, our Delinquent
> Court judges would not have granted an
> expungement motion where the offender had any
> subsequent convictions as an adult let alone
> was currently serving a sentence. …

(Answer, Exhibit F, ECF No. 9-8.)

Petitioner urges the Court to find the Philadelphia District Attorney is estopped from arguing that his expungement was granted in error because the prosecuting attorney was notified of the Expungement Order but failed to object. (Petr's Reply, ECF No. 10 at 16.) The respondent in this matter is the United States, represented by Assistant U.S. Attorney Matthew Skahill, not the Philadelphia District Attorney. Therefore, there is no basis for estopping Respondent from arguing that the expungement was granted in error.

Petitioner committed felonies at age eighteen, while he was on probation from the same juvenile adjudication that was expunged upon representation to the Juvenile Court that he had no adult criminal record. Based on the language of the expungement statute, and the letter from the Juvenile Court Unit of the Philadelphia District Attorney's Office, the Expungement Order would not likely have issued if the truth of Petitioner's adult criminal record had

been made known. Based on the circumstances underlying Petitioner's expungement, this Court concludes enforcement of the waiver of collateral review in the plea agreement does not present a fundamental miscarriage of justice. The Court will enforce the waiver and dismiss the § 2255 motion.[7]

> 2.   Alternatively, the Court Would Impose the Same Sentence under U.S.S.G. § 4A1.3(a)(1)

In the alternative, if the Court were to resentence Petitioner, it would impose the same sentence because Petitioner obtained the expungement under false pretenses. Under U.S.S.G. § 4A1.2(j) "sentences for expunged convictions are not counted, but may be considered under § 4A1.3 (Adequacy of Criminal History Category)." U.S.S.G. § 4A1.3(a) (1) states,

> (a) Upward Departures.—
>
> > (1) Standard for Upward Departure.--If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.

Reducing Petitioner's criminal history category to level three based on the expungement granted under false pretenses would not adequately reflect Petitioner's criminal history. According to

---

[7] The Court need not reach the issue of whether the § 2255 motion was untimely.

the PSR, Petitioner committed his first robbery at age twelve (PSR ¶57, ECF No. 1-3 at 8.) and another robbery at age sixteen (id. ¶61.) While he was still on probation for his second juvenile adjudication involving robbery, upon turning eighteen-years of age, he committed two violent bank robberies using a firearm,[8] the subject of his federal sentence.

Petitioner's criminal history calculation before the expungement of his juvenile adjudication, granted on the false representation that he had no adult record, placed him in Category IV, with seven points. (Sentencing Tr. at 4-5, ECF No. 9-5.) He had four points under § 4A1.2(d)(2) based on four juvenile adjudications[9] within five years of his federal offenses; two points were added under § 4A1.1(d) because he committed the federal offenses while on probation, and one point was added under § 4A1.1(e) because his federal offenses were committed less than two years from his release from custody on November 14, 2006. (Id.)

If Petitioner's motion for an expungement had accurately stated that he did not have an adult criminal record when he was discharged from probation on his juvenile adjudication, policy would favor expungement and the benefits it entails because it would give him a chance to lead a law-abiding life without the

---

[8] See PSR, ¶¶66-71, ECF No. 1-3 at 10-11.

[9] See PSR, ¶¶57-63(b), 72-79.

stigma attached to his juvenile record. Here, however, expungement and the reduction in criminal history points for his federal sentence serve no such policy and would not reflect the seriousness of Petitioner's inability to reform and respect the lives of others in society. Therefore, taking into account the expungement granted under false pretenses, the Court would depart upward under § 4A1.2(a)(1) and impose the same sentence imposed before the expungement, a total of 288-months imprisonment, based on a Category IV offense level.

Finally, the Court notes Petitioner also states that he has a post-conviction motion pending in state court, seeking relief from the June 2005 juvenile adjudication based on actual innocence. (Petr's Reply, ECF No. 10 at 7) ("The Court of Common Pleas never made a judicial ruling on the petition for post-conviction relief under 42 Pa. C.S. 9541.") If Petitioner is successful in his PCR proceeding and files a motion under § 2255, this Court would evaluate whether it would pose a fundamental miscarriage of justice to enforce the waiver of collateral review under those circumstances.

III. Certificate of Appealability

The Court must assess whether a certificate of appealability should issue. A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of

appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Based on the discussion above, reasonable jurists would not find it debatable that Petitioner's waiver of collateral review in his plea agreement should be enforced.

IV. CONCLUSION

For the foregoing reasons, the motion to vacate, set aside, or correct the sentence (2255 Mot., ECF No. 1) is **DISMISSED**, and the Court SHALL NOT ISSUE a certificate of appealability.

An appropriate Order shall follow.

**Dated:** **October 5, 2018**

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**